UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TESHOME WORKAGEGNEHU,                  )
6301 Frenchmans Drive, Apt. 104        )
Alexandria, Virginia 22312             )
                                       )
                PLAINTIFF,             )
                                       )
        v.                             )
                                       )      CIVIL ACTION NO. _____
                                       )
WASHINGTON METROPOLITAN AREA           )
TRANSIT AUTHORITY,                     )
500 6th Street, NW                     )
Washington, D.C. 20001                 )
                                       )
PAUL J. WIEDEFELD                      )
General Manager                        )
Washington Metropolitan Area Transit Authority)
600 5th Street, NW                     )
Washington, DC 20001                   )
                                       )
MARTIN VAN BUREN                       )
7503 Healy Place                       )
Upper Marlboro, Maryland 20772-442     )
                                       )
                                       )
                DEFENDANTS.            )
_____)

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

1.  Plaintiff, Teshome Workagagnehu ("Plaintiff") brings this civil action

    against Defendant, Washington Metro Transit Administration ("WMATA"),

    and one of its former employees, Martin Van Buren, ("Defendants") under

the WMATA Compact, D.C. Code Ann. 9-1107.01 et seq., , due to

Defendant Martin Van Buren illegally physically attacking Plaintiff on

March 8, 2017 in the WMATA Pentagon train station workplace, in front of

WMATA customers and employees, while both Plaintiff and Defendant

Martin Van Buren were in the course of conducting WMATA business, in

violation of D.C. tort law and WMATA workplace violence policy 99-037.

2.  As a result of the physical attack, Plaintiff received bruises, abrasions,

contusions, and other physical injuries which has caused pain and significant

emotional distress, which has and continues to require on-going medical

attention.

3.  Plaintiff seeks damages from Defendants WMATA and Martin Van Buren

of not less than $500,000.

**JURISDICTION AND VENUE**

4.  This Court has jurisdiction over this action under 28 U.S.C. § 1331, (U.S.

Const. art. I. § 10, cl. 3, (Compact Clause)).

5.  This Court also has jurisdiction over this action pursuant to Section 81 of the

WMATA Compact which provides that the United States District Court

shall have original jurisdiction over all actions brought by or against

WMATA.  D.C. Code. Ann. §9-1107.01 (81).  In creating WMATA, the

signatories to the Compact (Maryland, Virginia, and the District of

Columbia) together with Congress, conferred their respective sovereign

immunities on WMATA; they then proceeded to partially waive those

immunities in §80 of the WMATA Compact to permit suits for torts

committed by its directors, officers, employees and agents in the course of any proprietary (ministerial) function.  D.C. Code. Ann. §9-1107.01(80).

6.  This Court has venue over this action under 28 § U.S.C. 1391(b) because the WMATA headquarters and the principal place of business is located in Washington, D.C.

7.  This Court has personal jurisdiction over Defendant Martin Van Buren pursuant to D.C. Code §13-422 because Defendant works in the District of Columbia.

8.  This Court has personal jurisdiction over Defendant WMATA pursuant to D.C. Code §13-422 because Defendant maintains its principal place of business in the District of Columbia.

## PARTIES

### Plaintiff Teshome Workagagnehu

9.  Plaintiff, Teshome Workagagnehu, is a WMATA employee who was hired as Mechanic Helper D in the Automatic Fare Collection (AFC) unit of WMATA in June 2012.  He holds college degrees in electronics and engineering, and is a member of the Engineer National Honor Society. Plaintiff is presently a Mechanic A.  At the time of the physical assault by Defendant Van Buren, he held the job of Mechanic B; and in that position, his principal responsibility was, and remains, repairing and maintaining WMATA's Smart Trip card vending machines in its Metro train or subway system.  This responsibility requires that Plaintiff travel throughout the Metrorail system, which includes D.C., Maryland, and Virginia to repair and

3

maintain Smart card vending machines.  He presently resides in the nearby

Washington, D.C., suburb of Alexandria, Virginia.

### Defendant WMATA

10. Defendant, WMATA, is a quasi-governmental entity created by an interstate

    compact between Maryland, Virginia, and the District of Columbia.  It is

    engaged in the business of mass transportation of passengers by car, van,

    bus and Metrorail throughout the D.C. Metropolitan area.

11. Defendant, WMATA, employs over 500 employees and its principal place

    of business is located at 500 5th Street, N.W. Washington, D.C. 20001

12. Defendant, Paul J. Wiedefeld, is the General Manager of WMATA and, as

    such, its Chief Executive Officer.  He is sued in his official capacity. With

    respect to all actions by WMATA alleged in this Complaint, he acted under

    color of law.

### Defendant Martin Van Buren

13. Defendant, Martin Van Buren, is a former employee of WMATA, who at

    the time he illegally physically assaulted Plaintiff, worked as a train station

    manager.  As a train station manager, his responsibilities consisted of

    assisting WMATA's customers with, among other things, Smart Trip card

    usage and protecting the Smart Trip card machines and equipment from

    vandalism.  Defendant Van Buren presently resides in Maryland.

4

**FACTS**

14. On March 8, 2017, at approximately 2:00 p.m., Plaintiff arrived for work at the Pentagon train station, gathered his work equipment and walked to the Smart Trip card machines to perform preventive maintenance (pm) on the machines as required by his job responsibilities.  When Plaintiff arrived, the only person at the aforesaid Pentagon station kiosk was station manager Kim Barbee Thomas.

15. After he and Ms. Thomas exchanged greetings, she asked Plaintiff to explain to her how the Station Operation Counsel (SOC) - the large screen or computer in the station kiosk from which employees can control the gates and other aspects of the train station - worked.  Ms. Barbee did not know how to change Smart Trip card vending machine time to the SOC time so that the two devices coincided.

16. Plaintiff explained to Ms. Thomas how to make the two devices coincide; and thereafter, he explained that if she encountered trouble with wrong change for the customer or some other problem with the Smart Trip card vending machines, she should first check the time on the SOC and the time on each Smart Trip card vending machine.

17. After Plaintiff explained how the SOC worked, Ms. Thomas thanked Plaintiff for showing her how the SOC worked and began telling Plaintiff that no one else had showed her how the SOC should be adjusted to work in conjunction with the other devices.

18. While Plaintiff and Ms. Thomas were talking, Defendant Martin Van Buren arrived for work in his WMATA uniform, to work his normal working hours.

19. Defendant Martin Van Buren briefly exchanged greetings with Ms. Thomas and Plaintiff and sat his personal items and equipment where he normally sits them.  He then sat down by the kiosk telephone and intercom and continued to listen to the conversation between Plaintiff and Ms. Thomas.

20. Shortly after Defendant Van Buren arrived for work, a WMATA customer, who did not know how to use the Smart Trip card machine, appeared at the kiosk window and asked Defendant Van Buren how to purchase a Smart Trip card and get change.

21. Although assisting the WMATA customer was the most significant part of Defendant Van Buren's job responsibility, he started yelling at the customer and told the customer to "go get the f---ing change from the vending machine your f---ing self!"

22. The customer appeared to simply be asking for assistance with the Smart Trip card vending machine because he did not know how to use it himself.

23. After Defendant Van Buren's comments, the customer appeared flustered.

24. Seeing that the customer was frustrated, Plaintiff told Defendant Van Buren that since he was going to the vending machines to perform preventive maintenance (or adjust the machines so that the machines would work to give proper change), he could show the customer how to purchase a Smart Trip card and get change.

6

25. At that point, Defendant Van Buren yelled at Plaintiff saying: "Don't touch my f---ing machines!"

26. Plaintiff thought Defendant was joking and said: "Really?" and continued to toward the Smart Trip card vending machines to explain to the customer how to purchase a Smart Trip card and get change and how the customer could add any amount of money to the Smart Trip card that he may need later.

27. After Plaintiff said; "Really?" Defendant Van Buren yelled: "I am serious, do not touch my f---ing machines! They are broken!"

28. Plaintiff continued to walk to the Smart card machines to assist the customer.  Plaintiff explained to the customer how to get change and how the customer could add any amount of money to the Smart Trip card that he may need later.

29. After Plaintiff explained to the customer how to purchase a Smart Trip card and get change, the customer left the area.

30. After the customer left, Plaintiff performed preventive maintenance by checking and adjusting the Smart Trip card vending machines so that they worked properly.

31. After performing preventive maintenance on the express Smart Trip card vending machines, Plaintiff returned to the Station's kiosk and called his desk supervisor, Zewdu Mekonen Tefery, to report that he had performed preventive maintenance on all the express Smart Trip card vending machines in the way Plaintiff and other staff were instructed to do the

previous day at a team meeting.  Plaintiff told the desk supervisor that he
still had the regular machines to review, but he had been paged and directed
to go to the Rosslyn station for an assignment.  Plaintiff asked the desk
supervisor if he could finish the regular Smart Trip card vending machines
at the Pentagon station when he returned.  The desk supervisor told Plaintiff
it was fine as long as the assignment was done that day.

32. Defendant Van Buren was sitting down in the kiosk during Plaintiff's
conversation with Zewdu Tefery, Plaintiff's desk supervisor.

33. Plaintiff finished the conversation with his desk supervisor and hung up the
phone.

34. Kim Barbee Thomas and other WMATA customers were in the vicinity of
the Pentagon station kiosk.

35. As Plaintiff was preparing to leave the kiosk to go to his next work
assignment, Defendant Van Buren said that assisting customers was not
Plaintiff's responsibility and he should have left it alone.

36. Plaintiff said that fixing the Smart Card vending machines was his
responsibility and that he was going to fix the machines when the customer
asked for assistance.

37. There was a brief exchange as to each person's job responsibilities.

38. Suddenly, Defendant Van Buren stood up in the kiosk and yelled: "mother--
--er, I told you not to touch them machines!" and punched Plaintiff in the
face.  Plaintiff was confused for a second; and when Defendant Van Buren
punched Plaintiff a second time, Plaintiff reacted by holding Van Buren so

he could not hit Plaintiff anymore.  They both fell and something hit Plaintiff on the back of his head, and Plaintiff's leg got caught under the kiosk chairs and twisted.  Defendant Van Buren was on top of Plaintiff punching him with both fists.  Plaintiff went unconscious for a brief period of time and did not recall what happened.  During this ordeal, Plaintiff was in severe pain throughout his body and could not breathe.

39. After a while, Defendant Van Buren said, "this (fighting) is stupid we are going to be fired so let it go man!"  Plaintiff said "okay" so Van Buren could get off Plaintiff.

40. They both got up; and as Plaintiff turned away from Defendant Van Buren to leave, despite Van Buren's alluding to wanting to end the attack, Defendant Van Buren resumed the assault by hitting Plaintiff in the back of his head, back, and side.  Plaintiff tried to hold Defendant Van Buren tightly to stop from being hit and they both fell to the floor of the kiosk again. Defendant pushed Plaintiff out of the kiosk onto the ground -where they were able to be seen by the general public - as Van Buren continued to beat Plaintiff.

41. There were several WMATA customers who saw the assault, and Plaintiff heard a lady scream: "Help! Stop him! He is going to kill him!" Kim Barbee Thomas also witnessed the physical assault but did not intervene to stop it.

42. After Defendant pushed Plaintiff out of the kiosk and Plaintiff fell on the ground, Plaintiff blacked out again and only remembers regaining

consciousness and seeing a lot of people standing over him; he was dazed and not sure what was happening.

43. Plaintiff recalls a nurse asking him where he was and Plaintiff realized he was in an ambulance.  Plaintiff was taken to the George Washington University Hospital where he had to stay overnight.

44. After he was released from George Washington University Hospital the next day, he went home; but because the physical pain was so excruciating, he saw his personal physician, Dr. Mussarat Tahira at Alexandria Hospital, the next day.  After evaluating Plaintiff, she asked Plaintiff to check into Mount Vernon Hospital in Fairfax, Virginia, where he had to remain for a week due to physical and medical complications resulting from the physical assault.

45. As a result of Defendant's physical assault on Plaintiff, and consequent physical and emotional injuries, Plaintiff was placed on medical leave on March 8, 2017 and had to remain on leave until August 6, 2017, approximately a five-month period.

46. The physical assault was captured by a WMATA surveillance video.

47. Defendant Van Buren was subsequently convicted of Simple Assault under Va. Code Ann. §18.2-57(A) on March 8, 2017 for physically attacking Plaintiff.

48. Defendant's actions which constitute Simple Assault under Va. Code Ann. §18.2-57(A) constitutes assault and battery and intention infliction of emotional distress under District of Columbia tort law.

49. WMATA was created as the result of a Compact signed by Maryland, Virginia, and the District of Columbia and consented to by Congress (the Compact) under U.S. Const. art. I. § 10, cl. 3.

50. In creating WMATA, the signatories to the Compact, conferred their respective sovereign immunities on WMATA, but later partially waived those immunities in §80 of the WMATA Compact to permit suits for *torts* committed by its directors, officers, *employees* and agents *in the course of any proprietary (ministerial) functions.* D.C. Code. Ann. §9-1107.01 (80).

51. Section 80 of the Compact, as relevant to this complaint, reads: "WMATA *shall be liable* for it contracts **and** for its **torts** and those of its Directors, officers, **employees** and agents *committed in the conduct of any proprietary function*, in accordance with the law of the applicable signatory … but *shall not be liable* for any torts occurring in the performance of a governmental function." D.C. Code. Ann. §9-1107.01) (80). (emphasis added)

52. In order to determine if a WMATA employee's conduct is a "governmental" or a "proprietary" function, a Court must ask whether "any statute, **regulation,** or **policy** specifically prescribes a course of action for **an employee** to follow," while in the conduct of business. (emphasis added).

53.  "If the tort claim arises from a WMATA employee's failure to act as the law specifically prescribes, the conduct is not shielded by immunity." The employee's conduct is proprietary. *KiSKA Const. Corp. v. Washington Metro Area Transit Auth.*, 321 F. 3d 1151,1159 n.9 (D.C. Cir. 2003).

54. Sovereign immunity does not bar tort suits based on a WMATA employee's failure to follow the prescribed course of conduct. *Burkhart v. WMATA*, 112 F.3d 1207,1217 (D. C. Cir. 1997).

55. WMATA has a workplace policy, dated June 1, 1999, that specifically prescribes a course of conduct for Defendant Van Buren and other train station managers to follow while in the course of WMATA business.

56. WMATA workplace policy 99-037, as relevant to this complaint, states: "It is the Washington Metropolitan Area Transit Authority's [WMATA] policy to promote a safe environment for its employees. WMATA is committed to working with its employees to maintain a work environment free from violence, threats of violence, harassment, intimidation, and other disruptive behavior…Violence, threats, harassment, intimidation, and other disruptive behavior in our workplace will not be tolerated; that is, all reports of incidents will be taken seriously and will be dealt with appropriately.  Such behavior can include oral or written statements, gestures, or expressions that communicate a direct or indirect threat of physical and/or or emotional harm, property damages, and/or disruption of the Authority's business operations.  Individuals who commit such acts may be removed from the premises and may be subject to disciplinary action up to and including termination, criminal penalties, or both." (Exhibit A)

57. WMATA workplace policy 99-037 specifically prescribes a policy of safety and non-violence by train station managers and employees in the WMATA workplace. This policy has been in effect since at least June 1,1999.

58. WMATA train station managers and all WMATA employees are instructed on WMATA's policy 99-037 during employee orientation and during periodic WMATA training courses.

59. Defendant Martin Van Buren, who worked as a station manager, violated WMATA policy 99-037, which specifically prescribes non-violence and safety, in the WMATA workplace when he illegally physically assaulted Plaintiff on March 8, 2017 during the course of conducting WMATA business.

60. When Defendant Van Buren physically assaulted Plaintiff in the workplace in front of customers and employees on March 8, 2017, Defendant Van Buren had been employed by WMATA since at least June 1, 1999 and was aware or should have been aware of WMATA policy 99-037 which prescribes employee non-violence and safety in the WMATA workplace.

61. Defendant Van Buren's illegal physical assault upon plaintiff while he was performing WMATA responsibilities as a WMATA train station manager in the WMATA workplace constitutes a "proprietary" function under Section 80 of the compact and WMATA's sovereign immunity does not bar suit against WMATA and Defendant Martin Van Buren in this Court. (D.C. Code Ann. 9-1107.01 *et seq.*; *Burkhart, Id.* at 1207.

62. Since the torts of assault and battery, and intentional infliction of emotional distress were committed by Defendant Van Buren in the course of his performing a proprietary function for WMATA, Defendant Van Buren and WMATA are liable in tort, under D.C. law, for damages.

## LEGAL CLAIMS

### COUNT I

### ASSAULT AND BATTERY

63. Plaintiff Workagegnehu incorporates paragraphs 1 through 62 of this
    Complaint as if fully set forth herein.

64. Section 80 of the WMATA Compact, as relevant to this Complaint, reads:
    "WMATA *shall be liable* for it contracts **and** for its **torts** and those of its
    Directors, officers, **employees** and agents *committed in the conduct of any*
    *proprietary function…"* (emphasis added)

65. Section 80 of the WMATA Compact allows tort suits against WMATA if a
    WMATA employee committed the tort because the employee failed to
    follow any specifically prescribed WMATA policy while conducting
    WMATA business.

66. Defendant Van Buren violated WMATA specifically prescribed policy 99-
    037, which calls for WMATA employees to maintain a safe, peaceful, non-
    violent work environment, when he physically attacked Plaintiff on March
    8, 2017, during the course of conducting WMATA business.

67. Under D.C. tort law, one is liable for the tort of assault when one
    intentionally and unlawfully attempts or threatens, either by words or by
    acts, to do physical harm to another. *Green v. Shegan*, 123 F. Supp.3d 88, 91
    (2015).

68. Under D.C. tort law, one is liable for the tort of battery when one
    intentionally acts to cause harmful or offensive bodily contact. *Green v.*

*Shegan, Id.; Harris v. U.S. Dep't of Veterans Affairs*, 776 F.3d 907, 913 (D. C. Cir. 2015).

69. Defendant WMATA and Defendant Martin Van Buren are liable, under Section 80 of the WMATA Compact, for the District of Columbia torts of assault and battery, because Defendant Martin Van Buren failed to follow WMATA's prescribed policy 99-037, which calls for WMATA employees to maintain a safe, peaceful, non-violent work environment, while he was in the course of conducting WMATA business.

70. Defendant Martin Van Buren's illegal physical assault and battery upon Plaintiff in the WMATA workplace caused Plaintiff physical and emotional injury.

71. Therefore, Defendant WMATA and Defendant Martin Van Buren are liable to Plaintiff for damages for assault and battery.

72. Plaintiff Workagegnehu, therefore, requests relief as set forth in more detail below.

## COUNT II

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

73. Plaintiff Workagegnehu incorporates paragraphs 1 through 72 of this Complaint as if fully set forth herein.

74. Section 80 of the WMATA Compact, as relevant to this Complaint, reads: "WMATA *shall be liable* for it contracts **and** for its **torts** and those of its Directors, officers, **employees** and agents *committed in the conduct of any proprietary function…"* (emphasis added)

15

75. Section 80 of the WMATA Compact allows tort suits against WMATA if a WMATA employee committed the tort because the employee failed to follow any specifically prescribed WMATA policy while conducting WMATA business.

76. Defendant Van Buren violated WMATA specifically prescribed policy 99-037, which calls for WMATA employees to maintain a safe, peaceful, non-violent work environment, when he physically attacked Plaintiff on March 8, 2017, while conducting WMATA business.

77. Under D.C. tort law, one is liable for the tort of intentional infliction of emotional distress when one acts in an (a) extreme and outrageous manner (b) which either intentionally or recklessly (c) causes the plaintiff severe emotional distress. *Green v. Shegan*, 123 F. Supp.3d 88, 92 (2015).

78. Defendant Martin Van Buren's illegal physical attack upon Plaintiff in the WMATA workplace on March 8, 2017 while he was conducting WMATA business constitutes intentional infliction of emotional distress under D.C. tort law.

79. Defendant WMATA and Defendant Martin Van Buren are liable under Section 80 of the WMATA Compact for the District of Columbia tort of intentional infliction of emotional distress because Defendant Van Buren failed to follow WMATA's prescribed policy 99-037, which calls for WMATA employees to maintain a safe, peaceful, non-violent work environment, while he was in the course of conducting WMATA business.

80. Defendant Martin Van Buren's intentional, outrageous and reckless conduct directly caused Plaintiff physical pain and emotional distress.

81. Thus, Defendant WMATA and Defendant Van Buren are liable to Plaintiff for damages for intentional infliction of emotional distress.

82. Plaintiff Workagegnehu, therefore, requests relief as set forth in more detail below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays as follows:

**a.**  That the Court enter judgment against Defendants, WMATA and Martin Van Buren.

**b.**  That the Court award Plaintiff damages in an amount equal to all of his accumulated lost wages and benefits, including back pay, front pay and benefits; and compensatory damages for the physical injury and emotional harm caused by Defendants, including prejudgment and post judgement interest and any other damages permitted; in an amount not less than $500,000.

**c.**  That the Court award Plaintiff payment of all fees, costs, expenses, inclusive of attorney's fees and expert fees, if needed.

**d.**  Said damages are to be paid by Defendants jointly and/or severally in their individual capacities.

## JURY DEMAND

Plaintiff, by and through counsel, hereby requests a trial by jury.

Respectfully submitted

Larry Ward, D.C. Bar No.  419105
P.O. Box 1137
2 Massachusetts Avenue, N.E.
Washington, D.C. 20002
301-325-2468
larryoflegacy@gmail.com