UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|                                              |   |                                |
|----------------------------------------------|---|--------------------------------|
| TESHOME WORKAGEGNEHU,                        | ) |                                |
|                                              | ) |                                |
| Plaintiff,                                   | ) |                                |
|                                              | ) |                                |
| v.                                           | ) | Civil Action No. 18-0526 (ABJ) |
|                                              | ) |                                |
| WASHINGTON METROPOLITAN                      | ) |                                |
| AREA TRANSIT AUTHORITY, *et al.*,            | ) |                                |
|                                              | ) |                                |
| Defendants.                                  | ) |                                |

## MEMORANDUM OPINION

Plaintiff Teshome Workagagnehu brought this action against defendants Washington Metropolitan Area Transit Authority ("WMATA"), Paul J. Wiedefeld in his official capacity as General Manager of WMATA, and Martin Van Buren, a former employee of WMATA, under D.C. Code Ann. § 9-1107.01 *et. seq.* (the "WMATA Compact") asserting claims of assault and battery (Count I) and intentional infliction of emotional distress (Count II). Am. Compl. [Dkt. # 6] ("Am. Compl.") ¶¶ 1–14, 74–99. Plaintiff seeks "damages in an amount equal to all of his accumulated lost wages and benefits, including back pay, front pay and benefits; and compensatory damages for the physical injury and emotional harm caused by [d]efendants . . . in an amount not less than $500,000," as well as attorneys' fees and costs. *Id.*, "Prayer for Relief" at 18.

Defendants Wiedefeld and WMATA have moved to dismiss the suit pursuant Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). WMATA Defs.' Mot. to Dismiss Pl.'s Am. Compl. with Prejudice [Dkt. # 8] ("Defs.' Mot.") at 1. Defendants argue that the Court lacks subject matter jurisdiction because "[p]laintiff and WMATA agreed to a Stipulated Order entered

by the Commonwealth of Virginia Workers' Compensation Commission on May 4, 2018, whereby WMATA agreed to compensate [p]laintiff for the same injuries alleged in the Amended Complaint," and as such the Virginia Workers' Compensation Act ("VWCA") provides the exclusive remedy for plaintiff's injuries. *Id*. The Court finds that it has jurisdiction over plaintiff's claims under the WMATA Compact, but plaintiff's injuries are barred from further relief by the VWCA. Accordingly, defendants' motion to dismiss will be granted.

## BACKGROUND

Plaintiff began working for WMATA as a mechanic in June 2012. Am. Compl. ¶ 10. On March 8, 2017, he went to the Pentagon train station in Virginia to repair SmartTrip card machines. *Id.* ¶ 15. While he was there, he got into an argument with Martin Van Buren, the on-duty train station manager. *Id.* ¶¶ 14, 36–37. According to plaintiff, Van Buren became upset after plaintiff assisted a customer purchase a SmartTrip card. *Id.* ¶¶ 26–28, 36. Van Buren told plaintiff that helping customers was outside of plaintiff's "responsibility," and plaintiff disagreed. *Id.* ¶¶ 36–38. Then Van Buren allegedly punched plaintiff in the face, pinned him to the ground, and continued punching him. *Id.* ¶ 39. Plaintiff was taken to a hospital where he stayed overnight. *Id.* ¶ 48. Police arrived at the scene and defendant Van Buren was arrested. *Id.* ¶¶ 44–46. On May 5, 2017, Van Buren was convicted of simple assault under Va. Code Ann. § 18.2-57(A). *Id.* ¶ 53. Plaintiff alleges that he continues to suffer physical and emotional harm from the attack, and that his pain prevents him from working at full capacity, which also hurts him financially. *Id.* ¶ 2; *see also* Decl. of Teshome Workagegnehu [Dkt. # 13-1] ("Pl.'s Decl.") ¶¶ 1–53.

In a declaration attached to his amended opposition to the motion to dismiss, plaintiff also avers that after the attack he "was placed on Workers' Compensation . . . from March 9,

2017 to November 5, 2017." Pl.'s Decl. ¶ 3. Plaintiff resumed work in November 2017, but by February 2018, he was in so much pain that he had to undergo surgery on his right knee and was unable to work. *Id.* ¶¶ 4–7.

On March 7, 2018, plaintiff filed this suit seeking damages for the workplace assault. Compl. [Dkt. # 1], and six days later, on March 13, 2018, he filed his second workers' compensation claim in Virginia, "seeking wage loss benefits from February 6, 2018 to March 13, 2018 and life time medical benefits." Pl.'s Decl. ¶ 8. Plaintiff filed an amended complaint with this Court approximately a month later, on April 26, 2018, but the amended complaint did not mention plaintiff's workers' compensation claims based on the same assault. *See generally* Am. Compl.

While this suit was pending, plaintiff retained an attorney "who specializes in Virginia Workers' Compensation law," who "settled" his second workers' compensation claim on May 4, 2018. Pl.'s Decl. ¶ 14. Plaintiff and WMATA agreed to a Stipulated Order entered by the Virginia Workers' Compensation Commission awarding plaintiff compensation for a period of temporary disability from February 6, 2018 to April 8, 2018 and committing WMATA to pay for reasonable, necessary, and causally related medical benefits pursuant to Va. Code Ann. § 65.2-603. Ex. 1 to Defs.' Mot. [Dkt. # 8-2] ("Stipulated Order"). The Stipulated Order states that "[t]he claimant sustained injuries to his head, neck, low back, right leg, and right thumb arising out of his March 8, 2017 work-related accident," *id.* at 1, and it provides the following relief:

> ORDERED that the claimant's Award for temporary total disability dated May 26, 2017 is terminated effective November 5, 2017; it is further
>
> ORDERED that the claimant is awarded temporary total disability from February 6, 2018 through April 8, 2018 at the rate of $ 976.84 per week; it is further

> ORDERED that reasonable, necessary, and causally related medical benefits for the claimant's head, neck, low back, right leg, and right thumb shall continue as long as necessary pursuant to Va. Code § 65.2-603; it is further . . .
>
> ORDERED that any remaining claims contained in the Employer's Application for Hearing filed January 18, 2018 and Claimant's claim filed March 13, 2018 are dismissed with prejudice.

*Id.* at 2–3.

On May 10, 2018, six days after the Stipulated Order was entered, defendants WMATA and Wiedefeld filed a motion to dismiss this suit due to lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6).[1] Defs.' Mot.; Mem. of Law in Supp. of Defs.' Mot. [Dkt. # 8-1] ("Defs.' Mem.") at 1. Plaintiff filed an opposition to the motion, Pl.'s Mem. of P. & A. in Opp. to Defs.' Mot. [Dkt. # 9], and he was subsequently granted leave by the Court to file an amended opposition. Min Order (Oct. 29, 2018); Pl.'s Am. Mem. of P. & A. in Opp. to Defs.' Mot. [Dkt. # 13] ("Pl.'s Opp.").[2] The motion is fully briefed and ripe for decision.[3]

## STANDARD OF REVIEW

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all

---

[1] Defendant Van Buren did not join in this motion and it appears that he has not yet been served. Federal Rule of Civil Procedure 4(m) requires that a party be served within ninety days of filing a complaint.

[2] In his declaration, plaintiff avers that he filed a third workers' compensation claim on August 14, 2018 "because I missed work because of my injuries for the periods from July 8, 2018 and August 12, 2018," but the declaration does not indicate whether that claim was subsequently resolved. Pl.'s Decl. ¶ 25.

[3] *See also* WMATA Defs.' Reply [Dkt. # 10] ("Defs.' Reply"); Reply to Pl.'s Am. Mem. of Law in Opp. to Defs.' Mot. [Dkt. # 14].

4

inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

## I. Subject Matter Jurisdiction

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case."

*Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## II. Failure to State a Claim

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 678–79, citing *Twombly*, 550 U.S. at 555–56.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, citing *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), the Court is bound to construe a complaint liberally in the plaintiff's favor, and it should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16

F.3d 1271, 1276 (D.C. Cir. 1994), citing *Schuler*, 617 F.2d at 608. Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *see also Browning*, 292 F.3d at 242. In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

**I.  Sovereign Immunity**

Under the principle of sovereign immunity, federal courts are barred from adjudicating civil cases against the United States government or a state government unless the complaint falls under an express waiver of sovereign immunity. *See Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253–54 (2011). "WMATA was created by an interstate compact entered into by the District of Columbia and the states of Maryland and Virginia."[4] *Watters v. WMATA*, 295 F.3d 36, 39 (D.C. Cir. 2002). In doing so, "the three signatories [of the Compact] conferred each of their respective sovereign immunities, including the Eleventh Amendment immunity of the two states, upon the Authority." *Id*. Therefore, "unless WMATA's sovereign immunity has been waived, the district court lacks jurisdiction to enter a judgment against the Authority." *Id*. at 39–40. Accordingly, the Court must first find that WMATA's limited waiver of sovereign

---

4  On November 6, 1966, Congress consented to the WMATA Compact and enacted it for the District of Columbia. Washington Metro. Area Transit Auth. Compact, Pub. L. No. 89–774, 80 Stat. 1324 (1966). The Compact is codified at D.C. Code § 9–1107.01; Md. Code. Ann. Transp. § 10-204; and Va. Code § 32.2-3100.

7

immunity applies to plaintiff's claims before addressing the parties' arguments related to the Virginia Workers' Compensation Act.

In creating WMATA, Congress waived sovereign immunity for torts committed by employees and agents of WMATA "in the conduct of any proprietary function." *Morris v. WMATA*, 781 F.2d 218, 222 (D.C. Cir. 1986). Section 80 of the WMATA Compact states:

> The Authority shall be liable for its . . . torts and those of its . . . employees and agent committed in the conduct of any proprietary function . . . but shall not be liable for any torts occurring in the performance of a governmental function.

Taking all of plaintiff's allegations in the amended complaint as true, the Court finds that defendant Van Buren's workplace assault constitutes a "proprietary function," rather than a "governmental function," and thus sovereign immunity is waived.

"If an activity is a quintessential governmental function . . . it is within the scope of WMATA's sovereign immunity." *Burkhart v. WMATA*, 112 F.3d 1207, 1216 (D.C. Cir. 1997) (internal citations and quotation marks omitted). However, "[b]ecause it is difficult to distinguish between public and private sector functions with any precision," the Court distinguishes between conduct that is "discretionary" and "ministerial." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1138 (D.C. Cir. 2015), citing *Beebe v. WMATA*, 129 F.3d 1283, 1287 (D.C. Cir. 1997). Discretionary functions are "governmental," and thus are protected by sovereign immunity. *Burkhart*, 112 F.3d at 1216–17. Discretionary actions "involve[ ] judgment, planning, or policy decisions," and reflect "sovereign choices." *Banneker*, 798 at 1138, citing *KiSKA Constr. Corp., U.S.A. v. WMATA*, 321 F.3d 1151, 1159 n.9 (D.C. Cir. 2003) (alterations in original). By contrast, claims arising from "ministerial" duties are considered proprietary functions, and they are not immunized because they involve the "enforcement or

administration of a mandatory duty at the *operational level*." *Id*., citing *KiSKA*, 321 F.3d at 1159 n.9 (emphasis in original).

To determine whether a WMATA employee's conduct is discretionary, and therefore immunized, the Court applies a two-part test. *KiSKA*, 321 F.3d at 1159. First, the Court must "ask whether any statute, regulation, or policy specifically prescribes a course of action for an employee to follow," and second, whether the "governing statutes or regulations leave room for the exercise of discretion." *Id.* (internal quotation marks and citations omitted). If the exercise of discretion is "grounded in social, economic or political goals" it is considered a "policy judgment" that retains sovereign immunity. *Id.* (internal quotation marks and citations omitted). By contrast, if WMATA has "no rightful option but to adhere to the directive," the relevant conduct is ministerial rather than discretionary. *Abdulwali v. WMATA*, 315 F.3d 302, 304 (D.C. Cir. 2003).

Here, plaintiff alleges that defendant Van Buren was convicted of assault and battery under Va. Code Ann. § 18.2-57(A), Am. Compl. ¶ 53, and that he also violated WMATA's express policy against workplace violence, which states in relevant part:

> Violence, threats, harassment, intimidation, and other disruptive behavior in our workplace will not be tolerated; that is, all reports of incidents will be taken seriously and will be dealt with appropriately. Such behavior can include oral or written statements, gestures, or expressions that communicate a direct or indirect threat of physical and/or or emotional harm, property damages, and/or disruption of the Authority's business operations. Individuals who commit such acts may be removed from the premises and may be subject to disciplinary action up to and including termination, criminal penalties, or both.

Ex. A to Am. Compl. [Dkt. # 7] ("Safety Policy").

The *Burkhart* Court did not address whether WMATA's internal policies qualify as a "statute, regulation, or policy" as required under the first step of the sovereign immunity test, and subsequent D.C. Circuit opinions have not addressed the issue. *See Burkhart*, 112 F.3d at 1217;

*see also Felder v. WMATA*, 105 F. Supp. 3d 52, 58 (D.D.C. 2015) (stating in dicta that *Burkhart* does not reach the issue of WMATA's internal policies and that it is "unclear" if WMATA policies apply). However, other courts in this district and the D.C. Court of Appeals have consistently held that internal WMATA policies satisfy the first step of the analysis. *See, e.g.*, *Whiteru v. WMATA*, 258 F. Supp. 3d 175, 185–86 (D.D.C. 2017) (holding that the WMATA's Standard Station Operating Procedures ("SSOPs") regarding closing inspections qualified as a "policy" under the first step of the sovereign immunity test); *Robinson v. WMATA*, 858 F. Supp. 2d 33, 37–38 (D.D.C. 2012); *WMATA v. Barksdale-Showell*, 965 A.2d 16, 22–23 (D.C. 2009) (analyzing WMATA's Severe Weather Plan Alert and SSOPs); *WMATA v. O'Neill,* 633 A.2d 834, 838–39 (D.C. 1994) (analyzing an internal safety directive).

Here, even if one were to find that Van Buren's conduct was governed by a regulation or policy, it is clear that there is no room for discretion under WMATA's Safety Policy: employees have "no rightful option but to adhere to [it]." *Abdulwali*, 315 F.3d at 304. As a WMATA employee, defendant Van Buren was expressly instructed not to engage in threatening and violent behavior in the workplace. Since plaintiff's claims turn upon a failure to act in accordance with the Safety Policy, Van Buren's actions are not shielded by sovereign immunity. *See Robinson*, 858 F. Supp. 2d at 38 (holding that a bus operator who did not follow WMATA's safety rules did not qualify for sovereign immunity). Therefore, the Court finds that it has subject matter jurisdiction to consider plaintiff's claims and the pending motion to dismiss them.

## II.     The Virginia Workers' Compensation Act

The parties agree that Virginia state law applies to plaintiff's tort claims. *See* Pl.'s Opp. at 15; Defs.' Reply at 2. The WMATA Compact states that torts for which WMATA is liable shall be resolved "in accordance with the law of the applicable signatory." D.C. Code. Ann. § 9-

1107.01(80). The applicable signatory is determined by the jurisdiction in which the incident arose. *See Robinson v. WMATA*, 774 F.3d 33, 38 (D.C. Cir. 2014) (applying District of Columbia law to a tort claim when the injury occurred in D.C. and the plaintiff resided in D.C.); *see also Belton v. WMATA*, 20 F.3d 1197, 1999 (D.C. Cir. 1994) (applying District of Columbia law to a tort claim after plaintiff was run over by WMATA bus in D.C.). Plaintiff's injury occurred in Virginia, so Virginia state law applies. Am. Compl. ¶¶ 1, 47.[5]

"The Virginia Workers' Compensation Act applies to injuries 'by accident arising out of and in the course of' an individual's employment." *Butler v. S. States Coop., Inc.*, 270 Va. 459, 465 (2005), quoting Va. Code Ann. § 65.2–300. It is well established that, "[w]hen an employee sustains such an injury, the Act provides the sole and exclusive remedy available against the employer." *Giordano v. McBar Indus., Inc.*, 284 Va. 259, 264 (2012), quoting *Butler,* 270 Va. at 465. The Act's exclusivity provision states that:

> The rights and remedies herein granted to an employee when his employer and he have accepted the provisions of [the VWCA] to pay and accept compensation on account of injury . . . by accident shall exclude all other rights and remedies of such employee.

Va. Code Ann. § 65.2-307(A). Moreover, the Act "conclusively presumes" that "every employer and employee . . . have accepted the provision of [the] title." Va. Code Ann. § 65.2-300. In this case, the parties appear to have expressly "accepted the provisions" of the VWCA by entering into the May 2018 Stipulated Order which references plaintiff's "work accident." Stipulated Order at 1.

Plaintiff insists that the VWCA is inapplicable here because intentional torts – including his assault and battery and intentional infliction of emotion distress claims – are not injuries by

---

5  Plaintiff resides in Virginia. Am. Compl. ¶ 10. Defendant Van Buren resides in Maryland. *Id.* ¶ 14.

11

"accident" under the Act. Pl.'s Opp. at 5–6, 8. However, the Virginia Supreme Court has interpreted the term "accident" to encompass intentional torts. In *Butler*, the Virginia Supreme Court held that, "a physical assault may constitute an 'accident' within the meaning of the Act when it appears that it was the result of an actual risk arising out of the employment." 270 Va. at 465.[6] The court added, "that such an accident arises out of the employment if there is a causal connection between the employee's injury and the conditions under which the employer requires the work to be done." *Id.* In applying this standard, the Court must determine whether Van Buren's assault on plaintiff was "personal" or "directed against [him] as an employee or because of [his] employment." *Id.* at 466. If personal, then the VWCA's exclusivity provision would not apply, and plaintiff's claim could proceed.

In applying these principles, Virginia courts have held that workplace sexual assaults are "personal" in nature and therefore not barred by the VWCA's exclusivity provision. In *Butler*, the Virginia Supreme Court held that the plaintiff's assault and battery, and intentional infliction of emotion distress claims, were not barred by the VWCA because her assault was the result of her co-worker's "asserted personal attraction" towards her. 270 Va. at 466. In that case, the Court noted that the plaintiff's co-worker "frequently made personal comments . . . that he wanted 'to date' her," prior to forcibly trying to kiss her while on the job. *Id.* at 462. Similarly, in *City of Richmond v. Braxton*, the Virginia Supreme Court held that an assault on the plaintiff

---

6    In his opposition, plaintiff relies heavily on *McGreevy v. Racal-Dana Instruments, Inc.*, a case from the Eastern District of Virginia, to argue that that intentional torts cannot constitute "accidents" under the Virginia Workers' Compensation Act. Pl.'s Opp. at 6, quoting 690 F. Supp. 468, 469 (E.D. Va. 1988). However, that case is contrary to Virginia state case law precedents. *See Miller v. Washington Workplace, Inc.,* 298 F. Supp. 2d 364, 371 (E.D. Va. 2004) (declining to apply *McGreevy* "[g]iven the Virginia state law precedents"); *see also Butler*, 270 Va. at 465.

12

did not arise out of her employment because it amounted to "sexual assault," and was therefore "of a personal nature." 230 Va. 161, 165 (1985).

The Virginia Supreme Court also found an assault to be personal when it was the result of a co-worker's friendship and inappropriate joking that crossed the line. In *Richmond Newspapers, Inc. v. Hazelwood*, 249 Va. 369, 374 (1995), the Court found that the plaintiff's assault and battery claims were not barred by the VWCA's exclusivity provision because "there was evidence that [the co-worker] goosed fellow workers because he considered them his friends," and "[i]ndeed, friendship seems to have been the motivation for the pressroom goosing." *Id.* at 374.[7]

Here, the Court finds that plaintiff's assault arose out of his employment because the altercation arose from a purely work-related subject – the scope of plaintiff's work duties. *See Sutter v. First Union Nat. Bank of Virginia, Inc.*, 932 F. Supp. 753, 759 (E.D. Va. 1996) (holding that plaintiff's assault and battery claims arose out of the employment because the incident was prompted by a "work-related" dispute). In his complaint, plaintiff alleges that Van Buren told plaintiff immediately before he struck him that "assisting customers was not [p]laintiff's responsibility and he should have left it alone." Am. Compl. ¶ 36. Plaintiff has alleged no facts that would support a finding that Van Buren was motivated by personal feelings or animus. In fact, there is no indication that plaintiff had ever met Van Buren before the incident. Therefore, plaintiff's reliance on *Butler*, a case involving sexual assault, is misplaced. Pl.'s Opp. at 7.[8]

---

7  "To 'goose' means 'to poke or dig (a person) in some sensitive spot; *esp:* to poke (a person) between buttocks with an upward thrust of a finger or hand from the rear.'" *Richmond Newspapers*, 249 Va. at 370 n.1, quoting *Webster's Third New International Dictionary* 979 (1981).

8  Plaintiff also relies on *Auriemma v. Logan's Roadhouse, Inc.*, 2012 U.S. Dist. LEXIS 165194 (W.D. Va. Nov. 19, 2012), Pl.'s Opp. at 7, but that case, like *Butler*, found that the coworker's assault was "personal" because it constituted a sexual assault.

Because the Court finds that plaintiff's injuries under both counts arose out of his employment, and there is no dispute that the assault occurred during work hours and in the course of plaintiff's employment, *Butler*, 270 Va. at 465, the Court finds that the VWCA's exclusivity provision applies, and plaintiff is barred from further relief.

## CONCLUSION

Plaintiff was the victim of a senseless act of violence while he was trying to do his job. However, he has been compensated by his employer, and it is clear that the VWCA bars further recovery. Accordingly, plaintiff has failed to state a claim for which relief can be granted. For this reason, the Court will grant defendants' motion to dismiss. A separate order will issue.

**SO ORDERED.**

_____
AMY BERMAN JACKSON
United States District Judge

DATE: March 11, 2019

14